Good morning. May it please the Court, Gail Ivins appearing on behalf of Defendant Appellant Steven Yamashiro. The briefing in this matter raises multiple issues. There's the motion to withdraw the plea, procedural errors at sentencing, substantive reasonableness of the sentence, and the absence of counsel during victim Glenn Hill's first allocution. I would like to start with the procedural errors at sentencing. We've argued that the District Court at the time of the sentencing on December 17th did not indicate in any way that it was aware that there had been a Kimbrough argument made with regard to the fraud guidelines or that he had the discretion to adjust the sentence on that basis. He didn't address the argument in terms of the need to provide restitution that was made in Mr. Hathaway's sentencing papers. He didn't give the type of sufficient justification that the Supreme Court has identified and this Court has identified in Carty for a sentence that is so far above the advisory guidelines. And he didn't give a sufficient justification for this Court in terms of appellate review. And on plain error review, I think we get to all four of those being error that's playing, and then the question is, you know, can we show any kind of prejudice for prong three? And I think the fact that it was a 189-month sentence, the judge gave such short shrift to giving any kind of explanation for such an unexpected high sentence gets us to prong three, and I would ask the Court to exercise its discretion to recognize the error and to reverse on the basis that there were these four, three, two, or one procedural errors in the sentencing. But the motion to withdraw the plea was kind of a letter motion, and it didn't carry much weight, it seems, and nothing was pursued. It almost seemed pro forma, didn't it? The very – I mean, the interesting thing, of course, about this case is that we went from having someone who clearly was qualified counsel, who was doing a very good job for Mr. Yamashiro, negotiated a good plea agreement, filed a good sentencing position paper, and was ready to represent him at that September 17th sentencing, and I'm sure would have done a very good job, and I feel confident that the outcome might have been different had Mr. Hathaway continued to Mr. Conway, who, you know, will be effectively disbarred, according to the State Bar website, on the 20th of December, representing him in a totally incoherent way. He never did order that September 17th transcript and didn't review it. He filed this – Whose idea was it to fire Hathaway? Obviously, Mr. Yamashiro's, but we don't know what promises were made by Conway. I mean, we know – Exactly. We don't know. I mean, I don't see where that gets you anywhere today, but – Well, I'm just saying, if the court is inclined to disregard the motion to withdraw the guilty plea on the basis that it was improperly filed, I mean, all of that would be fought for a 2255 motion, because Conway's performance, I think, would be subject to an argument at a later time. I'm hoping we don't get there, because my hope is that the court will reverse and remand for resentencing, which will cure all of the errors identified. Well, tell me, the way I – it looks to me as though the guilty plea was in December of 11 and the sentence was in December of 12. A whole year went by? Yes. The original sentencing, Hathaway had continued it, and I believe there were other continuances, and it had been set by the original attorney at September 17th was the date for the original sentencing. And then Mr. Conway came in on that day. The court, despite not finding good cause, allowed that substitution of counsel, and then continued it one month to October, and then again, it is unclear from the docket, but it appears there was an e-mail, possibly – that's the reference in the docket – sent, and based on that, continued it again to December. Again, no objection from anyone? No. Conway made no objections to anything at all during his entire tenure as Mr. Yamashiro's counsel. Let me ask you about this elocution when Conway was not present, but Hathaway was. Hathaway was present, having been relieved. First of all, was there an objection by Mr. Hathaway to proceed to the elocution? No. All right. Secondly, I think we'll probably agree that when a victim is given an elocution, he can't be cross-examined. That appears to be the law, yes, Your Honor. Third, this victim, Mr. Hale, appeared later and gave a second elocution. He did, in response to counsel's argument. Right. Was there any difference between what Hale said in Elocution 1 and Elocution 2? Elocution 2, he specifically was responding to the argument regarding restitution and was saying, he's a crook, I don't expect any money, so just give him the maximum sentence. In the first elocution, it was much more detailed in terms of the entirety of the fraud, sort of how Hale had gotten involved in the fraud, what misrepresentations had been made to him. He also made the argument that he should get the maximum penalty, he's a Bernie Madoff. I mean, he said all of those things. The second elocution was somewhat more limited, and I think the question is, I mean, if the court were to find Let me ask you this question. With respect of the mechanics of the fraud, that was all known to the judge from the evidence. The victim describing it was simply putting a gloss on it. The importance of the elocution is to show the impact on the victim of the fraud. On that issue, was there anything different said in the first one than the second one? He calls him a liar, he refers to him as Bernie Madoff. There are differences, I could go through and delineate those, and I think the question is if the court were going to apply some kind of harmless error test, I think what's important here is that Mr. Conway not only wasn't present, Judge Wright had told Mr. Hathaway to sit and do nothing, and Mr. Conway then never did access the transcript, and so no lawyer ever contextualized that lengthy statement by Glenn Hale for purposes of the sentencing. It just wasn't addressed. Did the second lawyer, if I read the transcript correctly, the second lawyer, when he stepped in at the time of sentencing, had not even read the pre-sentence report, had he? He hadn't read it and did not know apparently how to download it, because Judge Wright had to do that for him on the 17th of December, and he had to give him all of that information and take a lunch break so that Mr. Conway could review those documents. What do you make of that? I mean, I think most of that's for a 2255 in terms of, I mean, I just, I do feel, and I think, that this sentencing proceeding was so flawed in so many ways, and that there are several clear bases in terms of procedural error for this Court to reverse and remand, and I think that doing it on that basis avoids other legal analysis that's maybe more complex and more difficult, and would allow Judge Wright, if it's remanded Judge Wright, or give Mr. Yamashiro and the government and the victims, if they choose to appear, a more fair and balanced and appropriate sentencing. What's the easiest way to reverse this, do you think? His failure to give an adequate explanation for the extent of the variance from the advisory guidelines. Was an objection had by the counsel? No, there were no objections by counsel. Just walk away. Judge Wright didn't say nothing, I mean, he, he did. He read the recommendation letter from probation, and he substituted 189 months for 63 months, and then at the end, he added, this is at ER 69, also in his consideration, the Court has evaluated the sentencing guidelines as required, and finds the calculations of suggested sentence therein, for this defendant, under the present circumstances, to be wholly inadequate. And if we look at Ressam, if we look at other cases from this Court, when we have a variance of this magnitude, something more is required. Well, I mean, what he is saying is, given the gravity of this crime, I think the sentence is too light. I mean, what, what, you think you can put it in red, and you don't put exclamation points, but I mean, that's his reason. But why, why not 90 months? Why not 110 months? Why is it 189? I don't know. It's a discretion. All of these things are discretionary. I mean, he, you know, I mean, he could spin a wheel, I mean, I, you know, you're not supposed to. But the, the Supreme Court has been clear that there is still appellate review for these types of errors, and one of the things that a judge has to do is explain, tying this to the sentencing guidelines, why this variance is appropriate, and that there needs to be sufficient justification for this variance. And there are three counts here that they're sentencing under. And what he did is he took the top guideline range, and he basically multiplied it by the three, didn't he? I think he actually took the low end, the 63, which is what probation had recommended and the government had previously, and then times three, 63 times three. Were they all within, were all counts encompassed within the same time period, or were they seriatim? They were within the same fraud. It was about a year-and-a-half, two-year fraud period. Little different description of, of the activities within that. They were, they were, you know, mail fraud and wire fraud related to the one, one overarching fraud. I see that my time. When I hear that a judge should have done something more, my next question is, what more? What, what do you consider to be the minimum requirement of that something more? I would look at this court's decision in United States v. Christensen or United States v. Ressam. Ressam, a case where the judge was reversed on substantive reasonableness, but they found no procedural error where he had given a detailed analysis of why he was going outside the advisory guidelines. And in Christensen, where the judge had gone above, 19 months above the advisory guidelines and gave a sufficient explanation. And I think, you know, it could be done in a paragraph or two, but the court needs to go through and say, you know, 78 months is not enough. The advisory guidelines are 63 to 78. I'm going to vary. This is why I'm going to vary. Boom, boom, boom. It doesn't have to be a lot, but it has to be more than just present circumstances. And what does it have to center on? I mean, there are those four elements in 3355A. And does he have to go through each one, this factor, this factor, this factor, this factor? I don't think it's that specific in terms of this court's law or the Supreme Court's law. I mean, it's just a sufficient explanation to justify so that we can look at that and we can say, oh, I understand why he did that. He told us why he did that. We are speculating as to why he did that. Did he do it to punish him for bringing in an incompetent lawyer? Did he do it because he was mad that he delayed things? Did he do it because the victims were there and he wanted to be sure that they saw that they got justice? We don't know. He made a statement at the time that the second lawyer walked in, I guarantee you the passage of time does not make this get better. What did that mean? That he had referenced the fact that the reason he was going to grant the motion for substitution to counsel and sign it even though it was not well-founded and he didn't find good cause for it, and I think would have been clearly within his discretion to deny a motion at that moment, was because he had received a letter from victim Ben Matsuda. And he referenced that and said, I'm getting more and more information that's making it worse and worse for you, so I'm going to give you obviously an opportunity to hang yourself. I mean, you know, the more time you delay your sentencing, the more negative information I'm going to get about your case. But it doesn't explain how that information about the victims, which is accounted for in the fraud guidelines, justified a sentence 111 months above the top of the advisory guidelines. Thank you. Thank you, Ms. Ivins. Good morning. May it please the Court, Jamie Lang on behalf of the United States. I'd like to start where the Court just left off. I think as we talked about whether the sentence was both procedurally and substantively reasonable in this case. As the Court noted, the judge in this case, the district court, did reference many times the impact that the victim's statements were having on him, and I think that is the driver of the sentence here. You know, that cuts both ways. It explains why he threw the book at the guy, but it also underscores how serious it was for the judge to proceed to take testimony from a victim without having a lawyer there. And I think to that point, Your Honor, to address the Sixth Amendment right to counsel, I think you can look at that in two ways. I think you can look at it from either a zoomed-in perspective or a zoomed-out perspective. And as Your Honor... I'm not sure what you mean by that. As Judge Bea correctly noted, victims, there is no right to cross-examine a victim. Victims have essentially an unfettered right to allocution. And so it is hard here, regardless of how you look at it, it's hard to see how the defendant suffered any prejudice by not having the newly retained counsel present, especially when he did have his current counsel present. He was present. Both of them were there. Well, he's not his current counsel present. He had his former counsel present. His former counsel present. And the former counsel was just relieved and told, don't say anything. Yeah, but again, it's hard to imagine what he could have done differently. Couldn't he have objected to any statements that Mr. Hale was making that were not based on the evidence and asked the judge to instruct the victim to state what he knew, not what he'd read in the newspaper or something like that? He could have done that. At the same time, there was a three-month delay between the sentencing. There was a transcript that was available for both of those from the first hearing. Whether the new counsel looked at it or not, I don't think that is relevant to this particular determination. I think that was available. The second victim, or victim Hale, who allocated at the first sentencing, was present at the second hearing. To the extent the counsel who missed his first allocation had any questions or wanted to refute anything that victim had said at the first hearing, I think he could have easily done that at the second hearing. He had plenty of time to prepare for that. And in that sense, it is still hard to imagine how him not being present for that one allocution substantially affected the defendant's rights in this case. Why isn't it structural? Okay, let's say it was harmless. Why isn't it structural to have a sentencing proceeding without counsel there? Well, again, I think here you can look at it two ways. You sort of can zoom in and zoom out. Let's zoom in on the fact that he's not represented by counsel at the sentencing. Why isn't that structural? Because here I think it could be considered a trivial infringement on any such right to Sixth Amendment right to counsel. Because here it was one victim's allocution. And, again, both the defendant was present for that. The newly appointed counsel heard the rest of the victim speak at that initial hearing, and he did not say anything. That's why it's harmless. Why isn't it structural? I don't believe it's structural here because when you look at – it didn't affect the entire process such that anything that resulted could not be trusted. I mean, you can measure any potential harm that was done here, which, again, because of a victim's right to allocute and because he had access to that transcript for a later time, it would not be structural error here. I think if you look at the case the government did submit on Friday via the 28J letter, I think you can analogize this situation to the situation in the United States v. Reyes. While it does deal with a different constitutional right, I think this Court found that that defendant's right to be present during voir dire was not violated, but the defendant was excluded from the voir dire of just one juror. I think there the Court said although, you know, a defendant has a fundamental right to be present, the Constitution is not implicated every time a defendant is excluded from a trial stage. For although the right of a defendant to be present at his trial is ancient and well-established, it's not all-encompassing or absolute. And I think there the Court honed in on the fact that the defendant's counsel was present for the exchange and that there was a transcript of the record and that it was a voir dire of one prospective juror. I think here you have the allocution of one victim who was present at the second sentencing. I think you have the fact that the newly retained counsel was present for the rest of the hearing and could hear the rest of the statements by the victims. He did not object at all to any of those statements, which suggests he would not objected to the statement at the beginning of the hearing. So in that sense, to the extent the Court does find that there was a right to counsel during, because you view it as a sentencing proceeding, as a large matter, the imposition on that right here was trivial such that no structural error occurred. Let's suppose, to be really expedient, let's suppose that we went right down through the people who were present at that time, who had found themselves ready to go. Now there was no lawyer and these people and the judge said, well, we'll let you go on and I'll make a transcript and I'll give it to counsel, the new counsel, when he comes. Again, I think you have to state with respect to victims because that is what we're dealing with here. Victims can submit written statements all the time. But let the people talk in open court to the judge. The victims. The victims. Yes. Talk to the judge and the government's lawyer and the former defense lawyer. Yes. Have a transcript made and give it to the new. Is that okay? I think, again, I would want to focus on the facts of this case. I think we are not dealing with a situation where the counsel is not present for any part of this hearing or any part of the victims' allegations. Let me make it a little clearer. Let's suppose after this first victim made a statement, a second one came forward and said, I can't be here. I'm going out of the country. Can I just say something? Any problem there? Again, I do see how if you open the door and say that to the extent all victims can allocute and a defendant does not have a right to counsel during those allocutions, that gets to be a slippery slope. Again, I think here, not looking to make a bright line rule, I think we have a certain circumstance where it was just one victim. But I do think generally as to victim allocutions, I think because victims do essentially have an unfettered right to speak and they can do so in different formats, to the extent that you're saying they could speak before the court and have a transcript, in some ways it's no different than a victim submitting a victim impact statement to either probation or the court, which happens on a regular basis without the input of defense counsel. I think defense counsel has a chance to respond to written victim impact statements. And, for instance, victims could potentially submit video-recorded statements, which could have the same effect as here. And, again, as Your Honors have noted, there is no right to cross-examine a witness. So while that is true of a trial witness, generally except in limited circumstances, you're going to impinge on that defendant's confrontation clause rights. Here, I'm not aware of any authority that stops a victim from submitting a video-recorded statement. And you have the same issue there as you do with written statements. Victims do this all the time. Defense counsel has an opportunity to respond. Defense counsel had that opportunity in this case at the second hearing that was three months after this first hearing. He had the benefit of the full transcript. He actually had that same victim present at that hearing and could have asked him any questions, to your point, whether there were any factual discrepancies or anything along those lines. To address the issue of going back to procedural reasonableness here, I do think that the district court did sufficiently explain the reasons for its sentence. Whether a court provides a sufficient justification for its sentence is not determined by the number of words that are spoken, but by the strength of the justification. And here, I believe the record does make clear that the district court has considered the parties' arguments. He referenced reading both all of the papers and carefully considering them at that first hearing. He also, there is a reasonable basis for exercising his own legal decision-making authority. And in this case, the court made clear he reviewed the PSR and the probation's recommendation letter. He correctly calculated the guidelines range. He considered the 3553A factors. He lists them out specifically. And he also discusses them in the context of the victim statements themselves, again, showing how important those victim impact statements were to him. It also ---- Kennedy, where did he list the 3553 elements? He listed them generally at ER 66 to 67. He just made a mention to them, 3553A4, the factors of. He didn't go through every one of them, did he? No, he did not. He just listed them. He stated that he had considered them. He didn't list, he referred. He referred to them and did state he had considered these factors while reaching his sentence. He did, though, in the context of the victim statements, say in the context of 3553 how he considered the circumstances of this case and how helpful it is to hear from the victims. I think he stated that on three occasions. To that I would point you to ER 27, 32, and 52, where, and especially of note, is he states at one point, hearing from you all has transformed by me. Yes. Finish your sentence. I had, which was just paper, words on paper into flesh and blood, human beings real live and in some cases devastating consequences. I mean, to me, I'll say it again. That explains why this proceeding was so important, why you should have had his lawyer there. I mean, it explains the sentence, but it also explains the importance of what happened. It does. I mean, again, unless there is another specific question regarding that. I guess you're out of time. Thank you. Thank you, Your Honor. May I have 30 seconds? Yes. Thank you. The trivial deprivation concept works in the public trial area. I haven't seen it in the right to counsel area. So I think this Court would be making new law if you adopted the government's proposal. And second, the rule that no lengthy explanation is required when the judge is just going to give a sentence, that applies in the cases where a guideline sentence, an advisory guideline sentence is imposed. Rita, Cardi, Overton, Diaz-Argueta, Stonerow, Sandoval-Ariano, all of those are within the advisory guideline sentences. It's a different rule under Gall and Cardi when it's above, so significantly above the advisory guidelines. And then there was the old notice of intent to depart upward. There's the old notice, which we don't do anymore for variances in the Ninth Circuit. We have that case. But it was the same concept, which is when you're going to do something so extreme, you need more discussion and more justification. Thank you. Thank you, Ms. Eisen and Ms. Lange. This concludes the case for Cardi to submit it. Good morning.
judges: Bell, Silverman, Bea